UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| RAMSES ROUTIER,<br><br>    Plaintiff,<br><br>    v.<br><br>WILBUR L. ROSS, JR., Secretary, United States Department of Commerce,<br><br>    Defendant. | Civil Action No. 17-2833 (JEB) |

**MEMORANDUM OPINION**

    Plaintiff Ramses Routier worked as a GS-13 Electronics Engineer in the National Telecommunications and Information Administration (NTIA) within the Department of Commerce. A 62-year-old man of Haitian descent with 27 years of federal-service experience, Routier's government career ended when he was removed from his position in fall 2016 by his supervisors, Binyam Tadesse and Dr. Darlene Drazenovich, for poor workplace performance. Believing his supervisors had discriminated and retaliated against him — and had subjected him to a hostile work environment — Plaintiff brought suit here. The Government has now moved to dismiss one count and narrow another, arguing that Routier has insufficiently alleged adverse action and a hostile work environment. The Court agrees with Defendant's contentions and will grant the Motion.

**I.    Background**

    The Court, as it must at this stage, sets forth the facts as pleaded in the Complaint. Routier, a 62-year-old immigrant from Haiti with two graduate degrees in electronics engineering, worked as a GS-13 Electronics Engineer in the Systems Review Branch of the

1

Spectrum Services Division of the Office of Spectrum Management (OSM) at the NTIA, which is housed within the Department of Commerce. See ECF No. 15 (Am. Compl.), ¶¶ 1, 6–10. His responsibilities included performing preliminary assessments of major federal radio-communications systems, developing procedures for efficient spectrum utilization, giving advice and guidance on how to resolve technical and policy problems, and providing electronics-engineering expertise to the Spectrum Services Division. Id., ¶¶ 13–15. In his position, Routier reported to two others: Binyam Tadesse, his first-level supervisor, and Dr. Darlene Drazenovich, his second-level supervisor. Id., ¶¶ 11–12. During the time relevant to this case, Routier worked with Hien Q. Ly, a 40-year-old Vietnamese-American electronics engineer who had similar duties. Id., ¶¶ 22–23.

Plaintiff alleges that his problems with his supervisors began as early as 2012. At that time, he visited with Drazenovich to inquire about his chances for obtaining a promotion to the GS-14 level. After hearing his question, Drazenovich slammed the door in Plaintiff's face. Id., ¶¶ 16–17. On a separate occasion, Tadesse derisively asked Routier whether he, a born-again Christian, engaged in the practice of voodoo. Id., ¶ 16-2. According to Plaintiff, "Voodoo is a syncretic religion practiced chiefly in Haiti and the Haitian diaspora," where Tadesse knew that Routier had been born and raised. Id., ¶¶ 17-2–18. At other times, Drazenovich and Tadesse referred to Plaintiff and other employees as "old" and indicated that they needed "fresh blood" in the office. Id., ¶ 19.

In July 2013, Tadesse told Plaintiff he was frustrated with reviewing his work because of the amount of time it took. Id., ¶ 24. Later that year, Tadesse met with Routier to discuss his yearly performance and ended up telling Plaintiff that he was not ready to be promoted to the GS-14 level because his work was inadequate. Id., ¶ 26. On July 23, 2014, Tadesse met with

Routier to advise him that he was "tired of seeing [Routier] making errors in his preliminary assessment[s]." Id., ¶ 31. Following that meeting, Tadesse issued him a "Performance Counseling" memorandum that gave notice to Routier that his performance was "of concern." Id., ¶ 34. The memorandum noted the importance of Plaintiff's work being accurate and thorough, and it pointed to specific examples of Plaintiff's frequent mistakes and their consequences to the whole branch. Id., ¶¶ 37–38. Along with the memorandum, Tadesse promised Routier that he would meet with him weekly to provide guidance on his work, as well as allow him additional time to study relevant manuals and conduct extra training. Id., ¶ 40.

Routier received his FY 2014 performance evaluation on October 4, 2014, less than two months after receiving this memorandum. Plaintiff was assigned an overall rating of 2 out of 5, marking his performance as "marginal." Id., ¶ 42. The evaluation explained Routier's performance deficiencies in a similar fashion to the memorandum. Id., ¶ 44. Around the same time, Routier's colleague Ly was given a performance rating of "5" for FY 2014, despite making some of the same errors. Id., ¶¶ 28, 45–46, 59. Routier first initiated contact with an EEO counselor about his concerns on November 12, 2014. Id., ¶ 47. He followed up by filing a formal complaint of discrimination on November 25, 2014. Id., ¶ 49.

On April 25, 2015, Routier met with Tadesse for his mid-year review. During this meeting, Tadesse explained to Plaintiff that his performance was still inadequate and unacceptable, and, as such, Tadesse was considering placing him on a performance-improvement plan (PIP). Id., ¶¶ 53, 58, 60–62, 64–65-2, 69. In summer 2015, Tadesse "made it impossible" for Plaintiff to meet a deadline and also requested that Routier inform him when he was away from his desk for more than 30 minutes. Id., ¶¶ 55–56.

In September 2015, Tadesse followed through and placed Routier on a PIP. Id., ¶ 57. The PIP specifically identified the errors Plaintiff had made and gave him detailed, concrete tasks that he would need to complete within 90 days. Despite this directive, Plaintiff's performance did not improve, and he failed to complete the PIP's specified criteria. Id., ¶¶ 58–71. In early August, Tadesse issued a Notice of Proposed Removal for Plaintiff and sent it to the deciding official, Drazenovich. Id., ¶ 81. The sending of this notice led to a series of communications between Plaintiff and Drazenovich before she ultimately issued a decision on September 27, 2016, to remove Routier from federal service effective immediately. Id., ¶¶ 82–86.

Achieving no success administratively, he then brought this action, which asserts three counts. Count I alleges discrimination and retaliation under both Title VII and the Age Discrimination in Employment Act. Count II alleges a hostile work environment under both statutes. Finally, Count III challenges a decision by the Merit Systems Protection Board upholding Routier's removal under civil-service rules. Id., ¶¶ 110, 111–176. Defendant now moves to dismiss the majority of Count I and all of Count II under Federal Rule of Civil Procedure 12(b)(6).

## II. Legal Standard

Rule 12(b)(6) provides for the dismissal of an action where a complaint fails "to state a claim upon which relief can be granted." In evaluating Defendant's Motion to Dismiss, the Court must "treat the complaint's factual allegations as true . . . and must grant plaintiff 'the benefit of all inferences that can be derived from the facts alleged.'" Sparrow v. United Air Lines, Inc., 216 F.3d 1111, 1113 (D.C. Cir. 2000) (quoting Schuler v. United States, 617 F.2d

605, 608 (D.C. Cir. 1979)) (citation omitted); see also Jerome Stevens Pharms., Inc. v. FDA, 402 F.3d 1249, 1250 (D.C. Cir. 2005).

Although "detailed factual allegations" are not necessary to withstand a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). Plaintiff must put forth "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. The Court need not accept as true "a legal conclusion couched as a factual allegation," nor an inference unsupported by the facts set forth in the Complaint. Trudeau v. Fed. Trade Comm'n, 456 F.3d 178, 193 (D.C. Cir. 2006) (quoting Papasan v. Allain, 478 U.S. 265, 286 (1986) (internal quotation marks omitted)). For a plaintiff to survive a 12(b)(6) motion, the facts alleged in the complaint "must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555–56 (citing Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)).

## III. Analysis

In considering Defendant's Motion to Dismiss, the Court first discusses Plaintiff's discrimination and retaliation claims in Count I, and next addresses whether Routier has sufficiently alleged a hostile work environment in Count II.

### A. Count I

In Count I, Plaintiff alleges that the Government both discriminated against him on the basis of age and nationality and retaliated against him for engaging in EEO protected activity. As Defendant notes, Plaintiff does not clearly specify which actions he believes were discriminatory and which were retaliatory. While clarity is certainly preferred, it is unnecessary for the purposes of deciding this Motion. This is because the Court, after setting out the

5

standard, will evaluate all claims under the lower retaliation burden of proof, thus giving Routier the benefit of the doubt.

As to discrimination, Title VII makes it "an unlawful employment practice . . . to discharge any individual, or otherwise to discriminate against any individual . . . because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). The ADEA likewise requires that "[a]ll personnel actions affecting employees or applicants for employment who are at least 40 years of age . . . in executive agencies . . . be made free from any discrimination based on age." 29 U.S.C. § 633a(a). To state a cause of action for discrimination under either Title VII or the ADEA, Routier must show that (1) he "suffered an adverse employment action" (2) because of his national origin or age. See Baloch v. Kempthorne, 550 F.3d 1191, 1196 (D.C. Cir. 2008).

An adverse action in the discrimination context requires "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing significant change in benefits." Taylor v. Small, 350 F.3d 1286, 1293 (D.C. Cir. 2003) (citation omitted). Besides being "significant," the change in employment status must result in "objectively tangible harm." Douglas v. Donovan, 559 F.3d 549, 552 (D.C. Cir. 2009) (citation omitted).

The bar for an adverse action in the retaliation context is lower. It "encompass[es] a broader sweep of actions than those in a pure discrimination claim." Baloch, 550 F.3d at 1198 n.4. Routier must allege an adverse employment action that would have "dissuaded a reasonable worker from making or supporting a charge of discrimination." Rochon v. Gonzales, 438 F.3d 1211, 1219 (D.C. Cir. 2006) (citation omitted). This condition "separate[s] significant from trivial harms" and protects the Government from claims of "petty slights, minor annoyances, and

simple lack of good manners." Burlington Northern & Santa Fe Ry. Co. v. White, 548 U.S 53, 67–68 (2006).

In moving to narrow Count I, Defendant argues that Routier's claims related to his placement on a PIP and his formal removal are the only actions sufficiently adverse to proceed. It maintains that his other claims — *i.e.*, (1) Plaintiff's low scores on his performance evaluations from FY 2012 to 2014, (2) his FY 2015 mid-year review, where his supervisor found that his performance was deficient, and (3) his supervisor's instruction that he let him know if he was going to be away from his desk for more than 30 minutes — do not clear the adversity bar. See ECF No. 17 (Def. MTD) at 9–12.

The Court agrees. As to the low scores and mid-year review, the D.C. Circuit has held, in the retaliation context, that "[i]n order for a performance evaluation to be materially adverse, it must affect the employee's position, grade level, salary, or promotion opportunities." Taylor v. Solis, 571 F.3d 1313, 1321 (D.C. Cir. 2009) (internal quotation marks and citation omitted). Plaintiff's Complaint, even once amended, stated no such effect. Routier attempts to work around this fact by trying to amend his Complaint through his briefing to state that his "artificially low performance appraisals made [him] ineligible for a step increase or cash award money." ECF No. 22 (Pl. Opp.) at 2. Even if such a general allegation were sufficient, a party cannot rectify the shortcomings of a complaint through an opposition to a dispositive motion. See ACLU v. Trump, 266 F. Supp. 3d 133, 142 n.5 (D.D.C. 2017).

Finally, Tadesse's instruction to let him know if Plaintiff planned to be gone from his desk for more than 30 minutes similarly does not qualify as a materially adverse action. As this Court explained in Aldrich v. Burwell, 197 F. Supp. 3d 124 (D.D.C. 2016), putting in a full day's "work is a standard condition of employment": "An employer's '[m]onitoring [of] an

employee's . . . time and attendance,' therefore, 'is a basic employment practice, and as such could only be adverse employment action if [plaintiff] previously had immunity from general employment policies.'" Id. at 133 (quoting Simms v. Navy Fed. Credit Union, No. 02-900, 2002 WL 32971969, at *5 (E.D. Va. 2002)). Courts have found that close monitoring can become materially adverse if the nature of the monitoring is "so extreme and intrusive as to constitute harassment in its own right." Id. at 134; see also Ortez v. Washington County, 88 F.3d 804, 809 & n.3 (9th Cir. 1996) (denying employer's motion to dismiss where it conducted "extreme supervision" in the form of "order[ing] another employee to follow [plaintiff] and otherwise confirm his whereabouts during the day"). Routier's allegations do not approach that level. Simply requesting a subordinate's whereabouts for significant periods of time is hardly the dictatorial supervision that might warrant materially adverse status.

The Court, accordingly, will grant the Motion and narrow Count I.

B. Count II

Defendant next targets Routier's count for hostile work environment. Title VII's prohibition on discrimination is not merely "limited to economic or tangible discrimination," but rather "evinces a congressional intent" that employees should not be forced to "work in a discriminatorily hostile or abusive environment." Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 115–16 (2002) (internal quotation marks and citation omitted). "The bar for demonstrating a hostile work environment is a high one: [A] plaintiff must show that his employer subjected him to discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." Achagzai v. Broad. Bd. of Governors, 170 F. Supp. 3d 164, 183 (D.D.C. 2016). While a plaintiff need not prove a hostile work environment at this stage, he still must

allege "extreme" conduct that satisfies the "demanding" standard for such a claim. Faragher v. Boca Raton, 524 U.S. 775, 788 (1998). Here, Plaintiff's Complaint is lacking any allegations of behavior "so objectively offensive as to alter the conditions of [his] employment." Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 81 (1998) (internal quotation marks omitted).

The Complaint, even as amended, does not state any facts that rise to the level of discrimination necessary for a hostile-work-environment claim to succeed. Rather than pointing to "discriminatory intimidation, ridicule, and insult," Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993) (citation omitted), he lists a series of "work-related actions by supervisors," which "courts typically do not find . . . to be sufficient for a hostile work environment claim." Munro v. LaHood, 839 F. Supp. 2d 354, 366 (D.D.C. 2012) (citation omitted); see also Bell v. Gonzales, 398 F. Supp. 2d 78, 92 (D.D.C. 2005) ("Occasional instances of less favorable treatment involving ordinary daily workplace decisions are not sufficient to establish a hostile work environment."). As factual support for his hostile-work-environment claim, Plaintiff specifically alleges that his supervisor criticized his poor performance, see Am. Compl., ¶ 135, counseled him about common errors in his work, id., ¶ 136, issued a performance-counseling memorandum and a PIP, id. ¶¶ 137, 144, failed to give him a Gold Medal Award, and gave him poor ratings in performance evaluations and progress reviews. Id., ¶¶ 135, 139, 141. While such criticism may be unwelcome, it is par for the course in a typical workplace and, as such, is insufficient to constitute a hostile work environment. See Nurriddin v. Bolden, 674 F. Supp. 2d 64, 94 (D.D.C. 2009) ("[T]he removal of important assignments, lowered performance evaluations, and close scrutiny of assignments by management [cannot] be characterized as sufficiently intimidating or offensive in an ordinary workplace context.").

Outside of these minor slights and performance-based criticisms, Routier claims that his September 27, 2016, removal contributed to the hostile work environment. See Am. Compl., ¶¶ 145–46. Yet, as his removal from federal service was immediate, he can hardly be subjected to a hostile work environment once gone.

**IV.     Conclusion**

For these reasons, the Court will grant Defendant's Motion and dismiss Count I except for the claims as to Plaintiff's placement on a PIP and his removal, and it will dismiss Count II in full. A separate Order consistent with this Opinion will be issued this day.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
United States District Judge

Date:  October 22, 2018